Agnes, A.J.
On September 13, 2002, defendants Randy Gomes and Suzanne Pomey tendered pleas of guilty to indictments charging them with the offense of larceny of property over $250. See G.L.c. 266, §30. T. 8-9.[1] The pleas were tendered along with a request that the court decline to enter a finding of guilty and, instead, order the cases continued without a finding for a period of time, subject to probationary conditions that the defendants offered to accept under G.L.c. 276, §87, followed by an order of dismissal. The defendants maintain that this disposition is permitted under the authority of Commonwealth v. Brandano, 359 Mass. 332, 337 (1971), and that it is appropriate under the facts and in the circumstances of these cases. The Commonwealth opposes the request. It maintains that in Commonwealth v. Tim T. 437 Mass. 592 (2002), the Supreme Judicial Court effectively eliminated the discretionary authority of the court to dismiss a criminal indictment “in the interests of public justice” over the objection of the Commonwealth, and that even if such authority exists it would not be appropriate to exercise it in this case.
For the following reasons, the court concludes that in each case, guilty findings should be entered and a sentence of probation, with special conditions, should be imposed.
BACKGROUND
1. Waiver of Rights & Factual Basis. At the hearing on September 13, 2002, the court conducted a plea colloquy and determined that each defendant had knowingly, intelligently and voluntarily waived their rights. T. 9-28.[2] The factual basis for each of the guilty pleas was supplied by the prosecutor. He explained that defendant Pomey was a Harvard College student and one of the co-producers of the Hasty Pudding Club’s annual theatrical event. Defendant Gomes, a fellow student and friend of the defendant Pomey, was involved in the Hasty Pudding Club production as the Assistant Man and Woman of the Year Manager. Neither defendant had any responsibility for the financial management of the Hasty Pudding Club or its productions.
The court takes judicial notice of the fact that the Hasty Pudding Club production generates a great deal of media attention and receives a great deal of coverage in the print and electronic media throughout the United States. As a result of this interest and attention, the Hasty Pudding Club receives revenues from various sponsors, and the sale of merchandise and tickets. The Club had a credit card machine it used to process tickets and merchandise sales. During the year 2000/2001, members of the club noticed that the defendants appeared to be living beyond their means. They had expensive electronic equipment installed in their dorm rooms (which adjoined each other), made frequent shopping excursions, took frequent trips and had a party celebrating defendant Pomey’s twenty-first birthday which featured an open bar.
In May 2001, the new co-producers of the Hasty Pudding Club’s production discovered irregularities in the club’s financial records. It appeared that there were shortages of between $40,000 to $50,000. In June, they learned that another $16,000 had been withdrawn from the club’s account. Bank statements were obtained on July 27, 2001 that disclosed large withdrawals from the club’s merchant vendor (MasterCard). Eventually, an investigation revealed that the club’s credit card machine had been used repeatedly from March 2000 to June 2001 to credit funds from the club’s account to an account in the name of the defendant Pomey (totaling $22,549.22) and two accounts in the name of the defendant Gomes (one account totaling $50,903.28, and one account totaling $17,537.46).
*244 The defendant Pomey appeared voluntarily before the Harvard University Police on September 24, 2001. She was advised of her Miranda rights and acknowledged making some transfers of club funds to her account. She did not disclose the full extent of the theft at this time. She stated that defendant Gomes had a bad drug problem, and that some of the funds were used to pay for drugs. She admitted that they had purchased personal items with some of the funds as well. She signed a written statement to this effect. Thereafter, the defendant Gomes also appeared voluntarily before the Harvard University Police and admitted his involvement. He explained that he had a serious drug problem. He also gave the police a written statement. A search of the room of defendant Gomes pursuant to a warrant resulted in the seizure of expensive electronic equipment. Further investigation revealed that the pair had spent club funds to travel to New York City, Chicago, Palm Springs and Cape Cod, and to make internet purchases of clothing and electronic items. See T. 28-37. The defendants acknowledged that if the case went to trial the Commonwealth could prove these basic facts by a standard of proof beyond a reasonable doubt. T. 37-38. The court found that each defendant had knowingly, voluntarily and intelligently waived his or her rights, but reserved decision about whether to accept or to decline to accept their pleas of guilty. T. 39.
2.Consideration of the interests of justice: view expressed by Defendant Pomey. On behalf of defendant Pomey, attorney DeMarco asked the court to decline to accept his client’s plea of guilty and instead to place her on supervised probation for two years. T. 44. He filed an affidavit in support of her position. The defendant is 22 years old. Her family was present with her in court. She was an honors student at her high school in Vine Grove, Kentucky. She has completed all academic requirements at Harvard, but has not yet been awarded her degree. She worked her way up to a managerial position at the Hasty Pudding Club. She had a close friendship with defendant Gomes and maintains that it was his drug problem and her misguided efforts to help him by using club funds that led her to engage in a large scale theft. Her affidavit suggests that the theft by defendant Gomes was without her knowledge. On January 17, 2001, she paid full restitution in the amount of $23,427.22 which is actually in excess of that which she is alleged to have stolen in this case. This was prior to her learning that she had been indicted. Counsel also pointed out that Ms. Pomey’s family has occurred substantial debts in trying to help their daughter pay for her college tuition. Counsel also explained that defendant Pomey has been working as a camp counselor for needy children in the Tennessee Delta region of the country through a volunteer, non-profit organization known as Teach America. She expresses remorse for her actions. See T. 45-54 & Affidavit of Attorney DeMarco.
3. Consideration of the interests of justice: view expressed by Defendant Gomes. On behalf of defendant Gomes, attorney DeMarco asked the court to decline to accept his client’s plea of guilty and instead to place him on supervised probation for five years. T. 54-55. The defendant Gomes, who is 22 years old, has agreed to pay full restitution as a condition of probation. The defendant, whose family also was present in court, is from Massachusetts. He too has completed the academic requirements for graduation from Harvard, but has not been awarded his degree as of this date. He also was an honors student in high school in Kingston, Mass. He excelled at athletics and scored very high on the SAT test. He has expressed an interest in attending law school and practicing law. He reportedly began using drugs while in college and moved from ecstasy to methamphetamines. He describes himself as an addict and submitted an affidavit that includes a letter from a psychologist who has been treating him. He maintains that he borrowed money from defendant Pomey to support his drug habit. He expresses remorse for his actions. See T. 56-61 & Affidavit of Randy Gomes.
4. Consideration of the interests of justice: the Commonwealth's view. The prosecutor opposed the argument for a continuance without a finding on grounds that the evidence suggests the motives of the defendants were less about satisfying a drug habit or trying to help a friend with a drug problem, and more about two people who stole money belonging to the club primarily to enjoy a lavish lifestyle. The Commonwealth suggested that the evidence points to defendant Pomey as the first to become involved in thefts, and the defendant Gomes as someone who became involved later, but who then stole a significantly larger amount of money. T. 63-75. See also Spreadsheets of financial transactions. (Exhibits 3-4.) The court also heard from Ms. Demashkieth, on behalf of the Hasty Pudding Club who reported that the actions of the defendants have caused significant harm to the organization. Apart from the financial loss, she pointed out that the thefts will hurt the image of the club and its efforts to raise funds from alumni and other potential donors. She also voiced her personal opposition to the recommendation by the defendants on grounds that it would set a terrible precedent. T. 85-89.
6. Consideration of the interests of justice: the court’s findings. The court accepts and finds credible the basic facts set forth in the affidavits submitted on behalf of the defendants regarding their backgrounds, their response to the discovery of the thefts, their conduct since the charges were brought, and their expressions of regret and remorse for their role in causing the thefts. Neither defendant has a record of prior criminal activity nor is alleged to have engaged in any other acts of misconduct. However, the court does not find that the motive for the thefts was simply a combination of the defendant Gomes’ drug problem and defendant Pomey’s desire to assist a friend. The *245 thefts involved in this case were substantial, repetitive, and not uncovered as a result of the initiative of either defendant. The payment of restitution may not fully address the harm that has resulted to the Hasty Pudding Club. The defendants’ use of funds for entertainment equipment, travel and other recreational and personal needs suggests that other motives were involved. While the court accepts as true that each of these defendants has the desire and the talent to finish their education, pursue a professional career, and dedicate their lives to productive ends, and recognizes that the imposition of a finding of guilty may impede their efforts to accomplish these goals, this is not a case in which the interests of public justice require a continuance without a finding and a dismissal.
LEGAL REASONING
1. The Brandano case. In Commonwealth v. Brandano, 359 Mass. 332 (1971), the defendants were charged with the felony offenses of receiving a stolen motor vehicle knowing it to have been stolen, G.L.c. 266, §28. They filed pretrial motions to continue the cases for one year and to place the defendants under the supervision of the probation department. An eventual dismissal of the charges was contemplated. Affidavits were filed on behalf of each defendant. The motion was opposed by the Commonwealth. One year later, the cases were dismissed. On appeal, the Supreme Judicial Court drew sharp distinction between the authority of the prosecutor, as a member of the executive department, and the authority of a judge to terminate a criminal prosecution. The power of the prosecutor to bring a prosecution to an end by filing a nolle prosequi is unquestioned, lies entirely within the prosecutor’s discretion, and is final. Brandano, 359 Mass. 335 (citations and quotations omitted). A judge, on the other hand, is constrained by the separation of powers under Article 30 of the Massachusetts Declaration of Rights, and does not enjoy the same discretion as a prosecutor. When the Commonwealth does not assent to a dismissal and there is no legal ground that requires it, a judge is not free to dismiss a case, even when a plea is tendered and the case is continued without a finding unless an adversarial hearing is conducted, appropriate findings are made, and there is a determination that the interests of justice require it. The Commonwealth would then have a right to appeal. Brandano, 359 Mass. at 337. However, the court noted that “there may be serious constitutional questions as to the power of a judge to dismiss” in the interests of justice, Brandano, 359 Mass. at 336, and elected not to decide the constitutional question. Id. at 337 (“Without deciding the ultimate constitutional question . . .”).[3]
2. The status of Brandano in light of recent developments in the law. Contrary to the Commonwealth’s argument, the Supreme Judicial Court has not overruled Brandano or decided the constitutional question left open in Brandano. In Commonwealth v. Tim T., 437 Mass. 592 (2002), the court simply applied the reasoning in Commonwealth v. Taylor, 428 Mass. 623, 626 (1999), and held that G.L.c. 276, §87, standing alone, is not authority to permit a case to be disposed of, over the objection of the Commonwealth, by a term of pretrial probation followed by a dismissal. The continued viability of the procedure set forth in Brandano is supported by the decisions in Commonwealth v. Rotonda, 434 Mass. 211 (2001), and Commonwealth v. Pyles, 423 Mass. 717 (1996). In those cases, the Supreme Judicial Court explained that judges in the district and juvenile courts have the authority to continue cases without a finding for a period of time with an order that they be dismissed at the end of the continuance period by conducting a plea colloquy and hearing, and by declining to accept a plea of guilty pursuant to G.L.c. 278, §18, provided that the judges explain their reasons and that the legislature has not otherwise prohibited the use of the option. In Pyles, the court explained that the Legislature was aware of the Brandano procedure before it adopted G.L.c. 278, §18 (effective in 1994). Pyles, 423 Mass. 722. The fact that the legislature elected to codify the Brandano procedure in a statute for use in the district and juvenile courts, albeit without all of the formalities prescribed in that case, knowing that it was employed in the superior court as well, is some indication that the legislature does not regard as unlawful the practice of judicial dismissals of criminal prosecutions over the objection of the Commonwealth (1) when required by the interests of justice, (2) following an adversarial proceeding, and (3) in circumstances in which the Commonwealth may appeal. Thus, in the superior court we are left with the alternative outlined in Brandano for use in those rare cases in which the facts and circumstances do not require a dismissal as a matter of law, but nonetheless require a dismissal in the interests of public justice.
ORDER
For the above reasons, the court accepts the pleas of guilty tendered by each defendant. Based on the absence of any prior criminal record, the payment (in the Pomey case) and the promise to pay (in the Gomes case) full restitution, the acknowledgment of responsibility for their actions, the impact that the prosecutions already have had on their academic standing and their personal lives, and their sincere expressions of remorse and regret, the Court adopts the recommendations made by the defendants for sentences of straight probation subject to special conditions (two years in the case of defendant Pomey and five years in the case of defendant Gomes).

Throughout this Memorandum of Decision, references to the transcript of the proceedings on September 13, 2002 are designated “T. [page)_.”

At the outset, the court informed the defendants that they could withdraw their pleas of guilty if the court did not adopt their sentence recommendation. T. 12-14. Initially, the court also informed the defendants that if their cases were contin *246 ued without a finding and they were placed on probation, that in the event of a violation of probation resulting in a guilty finding the defendants would enjoy the same right to withdraw their guilty plea if the punishment imposed for the violation was in excess of a sentence of probation. The court altered this term during the hearing on the defendants pleas and informed the defendants that if the cases were continued without a finding and, thereafter, a guilty finding entered against them while on probation, they would not be able to withdraw their pleas and each defendant would be subject to the recommendation made by the Commonwealth (in the case of Ms. Pomey, one year to the House of Corrections of which 30 days must be served and the balance suspended; in the case of Mr. Gomes 2V2 years to the House of Corrections, of which nine months are to be served and the balance suspended). The defendants accepted this provision as part of their plea. T. 75-81.

Some courts have reached the constitutional question left open in Brandano. See, e.g., State v. Fitzpatrick, 172 Vt. 111, 772 A.2d 1093 (2001) (upholding a judicial dismissal of sexual assault charges following two trials and hung juries); State v. Echols, 793 P.2d 1066 (Alaska 1990) (upholding judicial dismissal on grounds that government refused to grant immunity to a critical witness). See also McKinney’s Consolidated Laws of New York Annotated, Chap. 11-A, Part Two, Title I, art. 210.40 (outlining grounds for a motion to dismiss an indictment in the interests of justice). Compare, Zanini & Bucci, "The Interests of Public Justice” and the Judicial Decision to Terminate Criminal Prosecutions, 26 New England J. on Crim. & Civ. Confinement 163 (2000) (positing that Article 30 of the Massachusetts Declaration of Rights should be understood to forbid legislation such as G.L.c. 278, 818 and judicial dismissals under the procedure in Brandano).